LLC v. Atlantic Maritime Services LLC. Mr. Zeiger, is that correct? Good morning. May it please the Court. I'm Jeffrey Zeiger, on behalf of Atlantic Maritime Services LLC. This Court is being asked to take boilerplate language that appears in every plan regarding the treatment of creditor claims against debtors and find that it releases creditor claims against non-debtors. Before the bankruptcy court here, no court applying any law had concluded that language similar to that in dispute had this effect. The language in dispute does not extinguish non-debtor claims under Louisiana law or come close to requires non-debtor releases to be expressed and specific if included in a plan of reorganization. The bankruptcy court was wrong as a matter of law and its factual findings were clearly erroneous. This Court should reverse. The facts here are relatively simple. In 2020, Atlantic drilled oil and gas wells for Fieldwood. Fieldwood is the prior plaintiff in this case. They subsequently sold their assets to Quarter North, which is why Quarter North is substituted in. Fieldwood is the entity for which we provided the services. Fieldwood had a contract with Atlantic under which Atlantic was supposed to be paid $14 million for the drilling services. Fieldwood never paid. Fieldwood was the operator at the oil and gas leases, but it wasn't the only owner of interest in those leases. There were other entities called working interest owners that also have interest in those leases. Louisiana has recognized and has the public policy of Louisiana to make sure that oil and gas drillers like Atlantic are paid for the services that they render. They have a statute called the Louisiana Oil Well Lien Act or LOLA that provides drillers like Atlantic with liens in the property where they actually perform services. The idea being if I drill an oil and gas well on your lease and the operator doesn't pay me, you should not be unjustly enriched by my efforts and therefore you as a fellow owner in the lease are required. It would seem that this would come up certainly between Louisiana and Texas before. Has it not come up before? I'm sorry, Your Honor. It would seem that this very issue would have come up in Texas and or Louisiana before. Has it not come up before? This specific issue has come up before in a case in Texas actually called Austin Hardwoods where there was an issue with a plan of reorganization that said claims against the debtor shall be satisfied. Similar to the argument that quarter north is making here, the third party guarantor in that case said it's eliminating the underlying obligation and therefore I don't have to pay. That was a guarantor case, right? It was, Your Honor. Not a working interest owner. I'm talking about specific. Specific on the has come up the intersection of bankruptcy law and Lola. But again, the premise, the idea of the elimination of the underlying debt having a greater effect than the bankruptcy discharge has been addressed by this court in Snyder and the Texas appellate court in Austin Hardwoods. I guess my question is, Judge Iskor has been around the block for a long, long time. What, is this the first time he's construed this language this way? It is, Your Honor. In fact, he looked at it and conceded on the record that this plan is in every plan he's ever read. This language is in every plan he's ever read. And it's in a section that's talking about the discharge of claims against debtors. And so he looked at it initially and he said, this is language that's in every plan. It's boilerplate. And it has the meaning of emphasizing. It's colloquial. It emphasizes the bankruptcy discharge. The idea is you come out of bankruptcy and you're free and clear as to the debtor. We're not trying to go against the debtor or the debtor's successor quarter north. But what we do believe is Arlene survived the bankruptcy. He originally agreed. He looked at the language. He said, oh, that's not what I intended in my confirmation order. And then three months later, he reversed his decision. So he got it right and then he went back and changed. Yes, sir, Your Honor. He got it right the first time. But again, my question is, since this is so boilerplate, as you say, I'm just taking you at your word, why would Judge Itzker all of a sudden say, oh, wait a minute, I never realized this before, but now I see that extinguishes creditors' rights against third parties. Judge Itzker made some findings regarding intent that we think are clearly erroneous. He concluded that while this language is boilerplate and appears in every plan he's ever seen, here it had a special and unique meaning. He did not conclude that the plan was ambiguous in any way, and he purported to apply its plain meaning yet he looked and he said, it's clear that Fieldwood had a different intent with respect to these words than I'm used to. How do I know that? Well, there's no evidence of what Fieldwood actually intended by including it. Again, it's boilerplate, included in every plan. Well, but the disclosure statement said more. It went into detail, right? And then Judge Itzker went to the adversary proceeding, right? The, I guess, amended pleading, I can't remember. Yes, sir. Judge Itzker looked. The evidence of intent is the disclosure statement that he relied on in filings in the litigation. The problem with that is the disclosure statement itself said, you know, Section O, Adversary Complaint Against Atlantic. It didn't say Sections 4, 7, 6, 8, and 10, 3 have this special and unique meaning. It says we have sued, we have filed a lawsuit against Atlantic seeking a determination that, among other things, this language extinguishes the liens. Our view is that's. You say that's Fieldwood or Quarter North's wish. Certainly, that's what I wanted to happen, but it wasn't the intent of the parties. But I guess the question I have is, so the plan's confirmed, and where there's a disputed intent between the debtor and a creditor, Atlantic, how do we work that out when the plan's been confirmed? I mean, isn't that the bankruptcy court's province to interpret what the plan means at that point, regardless of what the creditor's intent may have been? It's not, Your Honor, where, and this court's president talks about it, it's not where it's an issue, a mistake of law, which we believe it is. And secondly, you only defer to the bankruptcy court for resolutions of ambiguous terms. Here, nobody has claimed that the term is ambiguous. It's clear what it says. The question is, what's it mean? Well, and Atlantic objected to the plan and didn't opt in to the, whichever the preferred class was, that has the more specific language in it, which is a point I'll ask counsel opposite, I guess. But was Atlantic required to then appeal the confirmation of the plan? I mean, is this sort of too little, too late? It's not, Your Honor. The case law, including the Hernandez case from 2016 from this court, talks about there's two different routes you can go. One is a direct appeal, if you're challenging the bankruptcy court's authority to include a provision like this. But you can also challenge it in the subsequent litigation, which predates confirmation. We were already litigating this issue at the time of confirmation. And this court makes clear that to the extent all you're doing is challenging the meaning of that plan provision, that's appropriate to do in the context in which we've done it. I don't think— I guess doesn't that take us right back to the bankruptcy court's interpretation of the plan at that point? Whether intent comes in or not, I grant you is dependent upon ambiguity, but it would certainly be probative, and it would be probative that Atlantic's objections to the plan were overruled. Well, our objection to the plan, Your Honor, is not related to this specific issue before the court today. Our objection to the plan was seeing this all play out. We said, we've opted out of non-debtor releases, and we need to make sure that there's nothing else you're going to claim in this plan negates our non-debtor release. At the confirmation hearing, they said, if you've opted out of the non-debtor release, you don't need to give it. So we dropped the objection. But at that point, we were already litigating this issue. And the for some time at that point of the confirmation proceeding. And so the confirmation hearing did not address the issue before the court today. That was still being litigated on this separate track. If we can go back quickly and just talk about the Louisiana aspects of this, this is what we reorganization under the bankruptcy code such that it eliminates our liens under Louisiana law. Now, the liens remain in place as long as the obligation that they secure is not rendered extinct. And so in English, the question is, when did Fieldwood's obligation to pay Atlantic become extinct? Now, if you look at Louisiana law, which was a focus, again, below the typical way that an obligation becomes extinct is through performance, which here means full payment that obviously didn't happen. If you want to render an obligation extinct through partial performance, less than full performance, you need credit or consent. We didn't consent in any way, shape, or form. We objected to the plan and opted out of the third party releases. Now, on appeal, Fieldwood and Porter North no longer argue that the debtor discharge, as they did below, has this effect, meaning that the debtor discharge isn't sufficient to eliminate our liens against non-debtors. That's consistent with 524E of the bankruptcy code. Nor do they argue that a potential pennies on the dollar recovery that we may get at some point in time is sufficient. That, again, is partial performance and we've not consented to it. So they've been pivoted over to race judicata principles and Texas law. But this court has never found these types of generic boilerplate language, again, dealing with the treatment of claims against a debtor sufficient to be a non-debtor release. If you want to do more than what you're entitled to under the plan, and remember 524E limits the effect of the discharge to a personal defense of the debtor. It doesn't have a knock-on effect against other entities or their property. If you want to do that, that's going to be expressed and specific. If you want to take your debtor plan and do something that relates to non-debtors, that has to be expressed and specific. This court has developed a specificity test over the course of about 20 years to look at factors as to whether the language regarding the treatment of claims against the debtor is sufficient to release non-debtor claims. Here, the Fieldwood plan doesn't satisfy any of these requirements. There is no express and specific provision that actually addresses this issue as to Atlantic. Judge Wilson noted there is one in the plan, class 6A, but that didn't apply to Atlantic. There was no specific provision that says that Atlantic's liens would be, or any 6B creditor's liens would be released. The language that Quarter North relies on does not identify the release parties or the property that's being released. It doesn't identify the claims that are being released, and it doesn't say that this release is integral or necessary to the plan, something that this court has looked at in other cases, meaning that it's not as if the working interest owners came in and they said we'd really like to make a big contribution here, but we need a release. There's nothing in the plan to that effect. And again, there's a good reason why this language fails to check any of these boxes under the specificity test. It's boilerplate. It's in every plan. That's what the experienced bankruptcy judge said, Judge Isger. That's what Fieldwood's counsel, an experienced bankruptcy practitioner. It's also why Judge Isger found that originally that this was literally just language that was designed to bolster the discharge. It didn't have a special and unique meaning. Now, they certainly knew how to draft language that would have a special and unique meaning. That's class 6A. Under the plan, unsecured creditors were divided into class 6A, which would receive actual cash, receive cash recovery, a portion of $8 million, and class 6B, which was everybody else who effectively received nothing. But to get that enhanced recovery in class 6A, you had to release your liens against non-debtors. Their specific language said, all liens against any working interest owner of the debtors or any such person or entities, respective assets or property, real or personal, regardless of the statute or the legal authority upon which you receive them. So that is an express and specific provision that would be more than sufficient to release the liens. It just doesn't apply to us. It's undisputed that we're class 6B. Does the indemnity arrangement or arrangements between Fieldwood and the co-working interest owners bear into this? It doesn't at this point, Your Honor. That certainly was a basis for some of the bankruptcy relief that was given, including with respect to the automatic stay. Your argument would be, we get to go after these third parties, and whatever happens between them and Quarter North is between them. Yes, sir. In Quarter North, they're a non-debtor, too. They purchase the assets. We can't go against them under the plan, but they're not a—whatever contractual arrangements that they have between—I see I'm out of time. If I could just finish answering your question. Whatever contractual arrangements they have between a non-debtor and non-debtors is not relevant to this discussion. If the Court has any further questions, I'll reserve my remaining time. Thank you. May it please the Court? If I could, I'd like to just make three points to simplify this case, make it really much easier to resolve. This is actually a straightforward race judicata case. It's too little, too late. The first point is about Espinoza and actual notice. The second is about Ray and Louisiana law. And then the third is about the meaning of the text. So first, we have a factual finding that there was actual notice. We told them, point blank, in the disclosure statement, this is the primary document explaining to creditors what the plan is going to do to their rights. We told them, quote, any Louisiana privileges held by Atlantic will be extinguished under LOLA Section 4864, including any alleged Louisiana privileges that extend to the working interest owner's working interests in such leases. So we told them, point blank, what we were proposing to do at actual notice. And Espinoza holds that when you have actual notice and you don't appeal, that is the end of the road. You cannot complain you did not get notice in some particular way. We heard this morning about how it needs to be expressed and specific. But that is what Espinoza rejects. I'm trying to understand the timing here. They did object to the plan. So we do not want our rights extinguished. And what was the ruling on that? Their objection was overruled. The plan was confirmed. And they did not appeal. And so that argument was squarely rejected at the confirmation stage. Was there already a separate adversary proceeding ongoing at that time about the lands? Yeah, let me, I'd like to clarify that actually, because there was an adversary proceeding. And you can think of the adversary proceeding as having sort of three buckets. One is about what is the, what is the authority of the court? Can the court enter an order with this effect? Second issue is about Louisiana law, just like what is the effect of a satisfaction under Louisiana law? I'm happy to talk about that. And then the third is about what is the meaning of the plan? But on the question of what is the authority? I just want to understand, you're not answering my question, because my understanding back when I was involved in some of these bankruptcy issues is you, there were lots of adversary proceedings involving third parties that the outcome of those was not going to affect the confirmation of the plan. In other words, it didn't affect the size of the creditor state or anybody's who gets what, it's all to be litigated in the adversary proceeding. So that you go forward with the Now, was there an adversary proceeding pending when the plan was confirmed over the objection of Atlantic? There was an adversary proceeding that was pending, but the confirmation resolved all the objections. It did not table any question about authority. It's really resolved on, it's in the ROA 12803, all objections to confirmation, ROA what? ARC 12803, all objections to confirmation of the plan that have not been withdrawn, waived, or settled are overruled on the merits. What happened to the adversary proceeding that was, was there an adversary proceeding that was pending? Yes. And so the adversary remained pending on the two other questions of what is the effect of a full satisfaction under Louisiana law and what did these words mean? And so I'd like to turn to both of those questions because I think those are presented here and they're important. On Louisiana law, the dispute between the parties has really dramatically narrowed over the course of the appeal. And it's gotten much, much simpler at this point is undisputed that with consent, the full satisfaction of an underlying obligation has the effect of extinguishing the obligation and extinguishing the privilege. And so that would knock out the lien. The only question of Louisiana law is, well, what happens if you have a federal court order saying that it's been fully and completely satisfied, but there isn't consent, right? Does that, does that get you to the same place? And Ray versus Leatherman, which we cite in our brief holds that the answer is yes. When you have the federal court order saying that it's been fully satisfied, then it's been fully satisfied. If you disagree with that court order, your remedy is to appeal. What about the, the guarantor cases? I mean, y'all both cite a lot but typically going through bankruptcy does not charge discharge the guarantor. Yeah. So I think a few responses to that. So one is we, we, we told them and we proposed that we were going beyond the discharge, that this is not just the discharge. We're going past that and satisfying the underlying obligation. So I think that's one complete answer. Another complete answer. I thought they were told you can withdraw your discharge, but you can still explain that piece of it. So, right. Under, under 6b, they retained the ability to object and then they could have taken an appeal. That's the key difference between parties in class 6a and 6b. Creditors in class 6a gave up their right to appeal. Creditors in 6b did not. For whatever reason, Atlantic did not appeal. And so they didn't avail themselves of the advantage of that, in that plan. But that, that, that, in that category of claims. But so about the adversary proceeding, the adversary proceeding, the only questions remaining in the adversary proceeding were about what is the effect under Louisiana law, which I'm saying is that that is dramatically narrowed. It's gotten much easier. Ray versus Leatherman is a complete answer to their arguments there. And then what we're really talking about is what are the meaning of the words in the plan? And the answer to that is simple. It says full and complete satisfaction. That means full and complete satisfaction. Why, why is there more specific language regarding 6a? If you wanted to opt in, you had to agree to waive, quote, any and all liens against co-working interest owners. In other words, why doesn't the plan just say this? Because it doesn't. It says satisfaction said, I mean, and again, even Judge Isker, everybody says it's boilerplate. And you're teasing a whole lot out of boilerplate when you've got this specific reference that is, comes the closest. And, and Atlantic clearly opted out, didn't take that specific reference. They said, we don't want that. We object. So I think a few answers to that. First, we have Judge, Judge Isker made a fine name that this was, quote, not boilerplate. That's 5-9. So he was for it before he was against it, I guess. But what he missed the first time was that we had told them point blank in the disclosure statement and the adversary what we were intending to do. And that's what brought him around. What you were intending to do, but then it didn't come down to that, it doesn't seem to me. You had, there's a specific opt in or opt out in the opt out reference working interest owner. So maybe what you intended, you didn't get. But look, I think that brings me to the second piece of, I think at most what their arguments about 6a and 6b and the other language in the plan, what it gets you is to ambiguity, that the plan is not clear about the treatment of what happens to folks in 6b. Doesn't our case law require specificity when we're talking about third party releases? Yes. And that's why I started with Espinoza and actual notice, because it's a complete answer to those. None of their cases involve actual notice. None of them. I think another complete answer that I want to be sure I get to is that those are cases about third party releases. This is not a third party release. The only party who is liable on the debt here is the debtor itself. This is adjusting debtor creditor relations, which is the epicenter of the bankruptcy court's power. Right now in the Supreme Court, the government is arguing the Purdue case saying that third party releases are categorically prohibited. Bankruptcy court can never do them. But the government agrees that bankruptcy courts have plenary authority to adjust debtor creditor relations. And that's what happened here. This is a satisfaction of the debt that is owed by the debtor to the creditor. Nobody else owes this debt. There's no third party liability. So this is not a third party release. I think that's another complete and dispositive answer to the case law that they're relying on. And then I think actually the third, because we do have a third, is this factual finding on intent. Because once you get past notice considerations, which we satisfy with actual notice, your role as a court is to be a faithful arbiter, interpreter of the intent. And what is the intent? And we have A. This is not a fact question based on credibility, or it's based on what the documents say, right? Judge Isker didn't pull me in this team like I believe X, but not Y. And so based on credibility findings, I find intent or not intent. It's just all based on the written documents, right? That's a question of law. I think this is actually a factual finding. But if I could, I think there's a really important point about intent, which was that there was never any miscommunication there. They fully understood our proposal. They described it as, quote, undisguised and no secret that we were planning to go beyond the discharge. And the question is, did the documents get you there? And that's a question of law, not a question of fact. Right? I think the question of law is, did we provide them sufficient notice that this is what we were intending to do? And Espinoza answers that question. It holds that actual notice is sufficient notice. Well, just assume we disagree with you on that. Let's go to the intent issue. How is that a fact question? The fact question is, what was the intent of the plan proponent, right? And what is, and it's based all on the documents. It's not based on credibility determinations at an adversary proceeding, right? I mean, I guess it could be. I think in this case the evidence here is documentary, because we said when we proposed the plan that we intended to go beyond the discharge and having the effect of extinguishing their liens. And the question is based on the documents, whether you accomplished that or not. I think that's the question of the effect under Louisiana law, right? So there's three different things. I'm just focusing on intent. I don't think it's a fact question. Convince me it's a fact question. I think candidly, I'll take it even without a fact, which I'll take it as a question of law. I think it is a fact question. It's a factual finding of intent. We expressed our intent. If there's any debate about what the intent is, we said from day one what our intent was. I think we, when this is a matter of plain meaning, it says full and complete satisfaction. That means full and complete satisfaction. They understood. They said it's no secret that we wish to absolve them and their property from Atlantic statutory rights and privileges under so no secret. They said it was undisguised. It's like if you think about this as a question, like if you approach this instead as a question of original public meaning and you're trying to understand what was the meaning of these words? What is the meaning that people attach to them? It is clear as day. Full and complete satisfaction means full and complete satisfaction. We told them at the beginning that it meant that it would extinguish their liens, and they understood. There was not a miscommunication on this point. They fully understood what we were proposing to do, and then they didn't appeal. And I think this is why, actually, it's not just that the case law is an opposite, but the policy considerations run very powerfully in the opposite direction. Well, I'm going to disagree with that, but go ahead. This isn't about policy. Court orders decided. It's not a policy question. That's exactly what I'm trying to get at. The finality of federal court orders is fundamental. I mean, think about Walker v. City of Birmingham. That was a case where the underlying order violated just about every provision of the Constitution. It violated the First Amendment. It violated the Fourteenth Amendment. And in the middle of the Civil Rights era, the Supreme Court upheld it, applied it as written because the parties didn't appeal. And in bankruptcy, these finality interests are incredibly strong. They're incredibly strong. We're talking about distributions of property, hundreds of millions of dollars, changing hands, jobs on the line. And so it would be, I think, really profoundly destabilizing to extend this Court's precedence to break from the actual intent, understood intent, when there's actual notice and the party didn't appeal. Explain to me how the appeal would have changed the confirmation of the plan. I don't get that at all. The appeal would have allowed them to raise these key arguments. I'm talking about as a bankruptcy law matter. What about this would have held up the confirmation of the plan? Who on the creditors committee would have objected? Who would have objected at all? How would this have undone the confirmation of the plan had they appealed? Atlantic did object. They raised the plan objection and it was overruled. If they had taken that appeal, they would have been able to present to this Court the question of whether a bankruptcy court has the authority to fully satisfy this kind of underlying obligation. That would have been, you know, so their arguments about third-party releases, whether these are third-party releases, that would be teed up in any future case where somebody takes an appeal. But this is a strange one-off case where they didn't appeal. And so now the authority question is off the table. And the only question is, does a court order that says that a debt has fully satisfied have the same effect under Louisiana law as a consensual satisfaction? Ray versus Leatherman answered that question. The only, after that, the only question is what do these words mean? It's a question of interpretation. And on the question of interpretation, I think honestly, it's pretty easy. Full and complete satisfaction means full and complete satisfaction. And we have a factual finding on intent that is clearly correct because there was no miscommunication. I think there's a really important point, I think it's going to be a harder case. Ray versus Leatherman actually involved in miscommunication. Remind me who, what interest your client has in all this? We are the successor in interest. We would be bound. The successor in interest of whom? Of Fieldwood, of the debtor. So we would be bound by the obligation to pay that has been fully satisfied. And so we executed— if Fieldwood got discharged in bankruptcy, how would it be liable to anybody? Because what would happen is the discharge would not actually extinguish the underlying obligation. All a discharge does is prevent collection against the debtor itself. Right. So if you're the successor of the debtor, how would you have liability? We would have—what would happen without this plan going beyond the discharge and doing the satisfaction of the underlying obligation, they would have been able to exercise their liens against the co-working interest owners, would have been able to come back against us. And so we would be the ones paying on behalf. They didn't have claims in bankruptcy that got against you that got discharged? The working interest owners didn't? They did not have claims against us in the bankruptcy. Contingent claims? We were a successor in interest. We purchased through the— Against the debtor. This is—I don't understand. So they did have claims against the debtor in the bankruptcy. And what they obtained in the bankruptcy was they obtained treatment under the plan, where among other things they got shares in a share— There wasn't a determination between the debtor and the working interest owners that even if the lien is foreclosed against the working interest owners, you still can't come back against the debtor because that would be an obligation that's dischargeable in the bankruptcy court. That's really—that's the heart of this whole dispute was, is this something that can be resolved in this way? We put in this language that said full and complete satisfaction, told them point blank what we intended it to do. They understood what it was that we were proposing. It's one thing to discharge the working interest owners to come back against Feilwood. It's a whole other thing to discharge the right of the creditors to go against third-party working interest owners. So the third party—I want to be clear. The third-party working interest owners have no personal liability. The only party that ever had any liability here is the debtor itself. This is an order that is adjusted— The lien goes against the interest of the working interest owners. That's correct. And an automatic— Why do you have a stake in that? Because it's a practical matter we're going to have to pay. Because of the indemnity agreements. Because of the indemnity— Earlier, I mean, the reality is that seems, per Judge Rittman, Chief Judge Richman's question, that's a couple of steps removed from what we're talking about. I perceive what Atlantic to be arguing is that they have a right to go against these co-working interest owners, not against Feilwood, now Quartermore. Exactly. And what we're saying is that the satisfaction of the underlying obligation— If you're wrong about it, why do you care? Because you're expecting litigation down the road from the working interest owners back against you, and why isn't that discharging the bankruptcy? I'd like to be clear. So we were not the debtor— Against the debtor. No, it would be against us because of the indemnity obligations. And I also want to be clear that this is actually really critical to the fresh start, right? The working interest owners are our co-partners in post-bankruptcy. They're the ones that we're working with. And what this would do is throw a wrench into our relationship. But wouldn't this go right back to the idea that maybe this should have been spelled out very clearly in the plan? So I think at some level, it does go back to the question of whether— You're going to satisfaction and settlement, this couplet or triplet or whatever, and boilerplate. Everybody says it's boilerplate, but you're teasing all this out when it seems that all this could have been laid out and addressed. Maybe I'm not following. I want to be clear that we did lay out everything and address it. We told them from day one in the disclosure statement that this is what we intended to do. We initiated the adversary proceeding to resolve whether we had the authority to do this. The bankruptcy court concluded that the answer was yes, and they didn't appeal. And so now we have a final order saying that it's been fully satisfied. They agree that the full satisfaction of the extinguishing the lien, that's what the plan means. That's what it says. That's what they understood. And so that's what it did. It extinguished the lien. If they have a problem with the lack of consent or even the lack of clarity in the underlying order, they should have taken an appeal. Espinoza holds that even if you didn't provide notice in some particular way that was required under the law, if you have actual notice and you didn't appeal, it's final. It's not void. And actual notice satisfies any due process requirement. I think Espinoza is really a complete answer to that concern about having clarity in the plan itself. They had actual notice and they didn't appeal. If there are no further questions, I would ask you to affirm. With respect to notice, there's a reason that this work goes to a specific language that's used in the plan. That is the objective notice that is given. What Quarter North is proposing could result in words in a plan that are not intended to be used in the plan, but are intended to be phrases in a plan having different notice or having different meanings to a creditor, depending on whether a declaratory judgment action was commenced against that creditor, whether counsel at a critical vendor motion hearing on the second day of the case made a comment that it has this unique meaning. There's a reason why this court always looks at the language. It's objective. Again, to the extent you look at what notice was given to us, the disclosure statement is very clear that it's notice that a lawsuit has been filed. It's not notice that these three provisions have this meaning. It's a request for a determination, a wish, a litigation position that it be so. It's not clear how they would respond to the point as to whether this language affects other 6B creditors. They only sued us. We're the only ones in the disclosure statement that says we sued Atlantic. Here's what we want. It doesn't say all 6B creditors have given up their rights to go against non-debtors. As far as the objection, again, we did object. It's not, but it was not on this issue. To answer the question clearly, there was an adversary proceeding going on at that time that addressed the question before this today. The confirmation hearing did not address that. We did say in our objection on record, page 12585, that it is no secret that Fieldwood wishes for the discharge in its plan to absolve the working interest owners. Then in the next topic sentence, we say, in the adversary proceeding, Atlantic articulates why Fieldwood's discharge does not and cannot release any liability of the working interest owners. In our objection, we said we're litigating that over there and we're not litigating that here. Judge Richman's question was spot on. This wasn't necessary to the Chapter 11 case or confirmation. How do we know that? Well, because they were more than happy to litigate this on a different track. There were pending motions, dispositive motions, at the time of the confirmation hearing. They never said this had to be decided in connection with confirmation. The reason that Quarter North cares about all of this is that there were claims. There were claims from the working interest owners back to the debtors. Those claims said, to the extent I owe Atlantic for the work it actually did, but to the extent I have to pay your bill, I'm coming back against you. Quarter North, as part of the plan, voluntarily agreed to pay that amount. So that obligation was subject to potential discharge and resolution, except through the plan process, they said, to the extent working interest owners, that you have to pay Atlantic the amounts that it's lawfully due, we will cover that. As far as the objection itself, we don't need to appeal. This Court has been very clear that you can contest the meaning of a plan afterwards. You cannot contest the authority of the bankruptcy court to include the provision. That's not what we're doing here. Why didn't we appeal? Because when you look at this language, no court has ever concluded that it has the effect that they say it does. Snyder, from this Court, actually looked at language that said, the underlying debt is canceled, it's discharged, and it's extinguished. That's the very word in Lola. And this Court said, that's not enough. The reverse, the district court, which had found the debt was absolutely annihilated and it removed any guarantor claims, this Court said, that's not enough. You can't take language regarding the treatment of a claim against the debtor and flip it into a non-debtor release. On Wray, that's distinguishable. That's their key case at this point, it sounds like. That is a specific negotiation between a creditor and a debtor with respect to whether the automatic payment would be lifted so the creditor could pursue its recovery against land. The agreement there, as reflected in the bankruptcy court order, was that to the extent you foreclose on the property, that would extinguish the underlying lien. It has nothing to do with, it wasn't a plan of reorganization, it wasn't boilerplate language that applies to all. It's a specific negotiation between the parties. For these reasons, we'd ask the Court to reverse. Thank you. Yes, we have your argument. The Court will stand adjourned until nine o'clock in the morning.